**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| AMY SKINNER, | No. CV 17-3795-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 19, 2017, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on July 21, 2017, and January 16, 2018. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on January 19, 2018, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 9, 1970. [Administrative Record ("AR") at 28, 164.] She has past relevant work experience as an apartment manager and an officer manager. [AR at 28, 58.]

Plaintiff previously applied for a period of disability and DIB, which was denied on January 3, 2012. [AR at 19.] The Administrative Law Judge ("ALJ") in the decision at issue herein, determined that "based on a lack of new or material evidence and a lack of good cause," plaintiff's January 3, 2012, denial of benefits was "not being reopened and revised." [Id.] Accordingly, he found the previous determination of nondisability was final and binding through January 3, 2012, pursuant to the doctrine of res judicata. [Id.] On August 29, 2012, plaintiff filed a new application for a period of disability and DIB, alleging that she has been unable to work since June 27, 2011. [AR at 19, 164-65.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an ALJ. [AR at 19, 126-27.] A hearing was held on September 22, 2015, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 35-60.] A vocational expert ("VE") also testified. [AR at 58-59.] On November 12, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from June 27, 2011, the alleged onset date, through November 12, 2015, the date of the decision. [AR at 19-29.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 14-15.] When the Appeals Council denied plaintiff's request for review on April 13, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a *reasonable* mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted) (emphasis added). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged

in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 3, 2012, the date of the last denial determination.[1] [AR at 21.] At step two, the ALJ

---

[1] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. [AR at 21.]

concluded that plaintiff has the severe impairments of degenerative disc disease of the cervical spine; obesity; fibromyalgia, with knee pain; depression; and anxiety. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 24.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[3] as follows:

> [She has] the capacity to lift and carry 10 pounds frequently; sit 6 hours in 8 hours, stand and walk 2 hours in an 8 hour day; no more than occasional bending and stooping; no work around hazards; and no greater than simple routine work with no more than occasional contact with the public and coworkers.

[AR at 26.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform her past relevant work as an apartment manager and as an office manager. [AR at 28, 58.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "document preparer" (Dictionary of Occupational Titles ("DOT") No. 249.587-018), and "addresser" (DOT No. 209.587-010). [AR at 28-29, 58.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of June 27, 2011, through November 12, 2015, the date of the decision. [AR at 29.]

/

/

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) discounted plaintiff's subjective symptom testimony; (2) considered the medical opinion evidence; and (3) found at step five that plaintiff could perform the occupations of "document preparer" and "addresser." [JS at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A. STEP FIVE STANDARD

At step five of the sequential evaluation process, the burden of proof shifts to the Commissioner to demonstrate that the claimant retains the functional capacity to perform gainful activity. 20 C.F.R. §§ 404.1512(f); Lounsburry, 468 F.3d at 1114 (citing Tackett, 180 F.3d at 1098-99). Thus, if the Commissioner is unable to establish that the claimant can adjust to other work that exists in substantial numbers either in the national or regional economy, the claimant will be found disabled under the Act. See Beltran v. Astrue, 700 F.3d 386, 389-90 (9th Cir. 2012) (noting that pursuant to 42 U.S.C. § 423(d)(2)(A), the significant number of jobs "can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country (national jobs)" and if either is found to be significant, the ALJ's decision will be upheld). The Commissioner typically establishes these findings by posing hypothetical questions to a VE during the hearing regarding: (1) occupations a worker with the claimant's age, education, and work experience retains the RFC to perform; and (2) the availability of such jobs in the national or regional economy. Lounsburry, 468 F.3d at 1114.

## B. STEP FIVE OCCUPATIONS

Plaintiff contends that there are "issues" with both of the occupations the ALJ identified that could be performed by an individual with plaintiff's limitations: "document preparer" (DOT No. 249.587-018) and "addresser" (DOT No. 209.587-010). [JS at 22.]

/
/

### 1. "Document Preparer"

Plaintiff argues that the "document preparer" occupation has a Reasoning Level of 3, which is in conflict with plaintiff's RFC limitation to simple routine (or repetitive) work.[4] [JS at 23.] Defendant responds that even if there is an apparent conflict between a limitation to simple routine (or repetitive) work and jobs with a Reasoning Level of 3, the error is harmless "because the record shows that Plaintiff would be capable of jobs at reasoning level 3." [JS at 25.] Defendant then suggests that plaintiff's "educational background, her successful performance of higher skilled jobs in the past, and the medical evidence . . . demonstrate[] that she was able to handle the requirements of a document preparer." [Id.]

The DOT defines jobs at Reasoning Level 3 as requiring the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, app. C. Courts have found that a limitation to "simple tasks performed at a routine or repetitive pace" may be consistent with Reasoning Level 2. See, e.g., Meissl, 403 F. Supp. 2d at 984 ("While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also . . . downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'"). However, "[a]s one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine." Id. at 983. Thus, Reasoning Level 3 expands the Reasoning Level 2 requirements of being able to follow "uninvolved" oral or written instructions, to include being able to follow instructions in diagrammatic form as well as oral and written forms, and to deal with "*several* concrete variables," as opposed to Level 2's "few concrete variables." DOT, app. C (emphasis added). The Ninth Circuit has determined that Reasoning Level 3 is inconsistent with a limitation to simple, routine, or repetitive work tasks. See Zavalin, 778 F.3d at 843-44 (holding that there

---

[4] The ALJ limited plaintiff to "simple routine work." [AR at 26.] Although plaintiff's argument as to this issue suggests that her RFC limitation was to "simple, repetitive tasks" [see, e.g., JS at 23], the relevant case law encompasses simple, routine *or* repetitive tasks or jobs. See, e.g., Meissl v. Barnhart, 403 F. Supp. 2d 981, 984 (C.D. Cal. May 25, 2005); Zavalin v. Colvin, 778 F.3d 842, 843-44 (9th Cir. 2015).

is an "apparent conflict" between the "limitation to simple, routine, or repetitive tasks, on the one hand, and the demands of Level 3 Reasoning, on the other hand"). Thus, defendant's post-hoc rationalization -- that based on plaintiff's background and experience she is capable of handling the Level 3 position of "document preparer" -- is inconsistent with the ALJ's RFC limitation to simple, routine tasks.

Based on the foregoing, the ALJ erred in determining that plaintiff could perform the occupation of "document preparer" and the error is only harmless if plaintiff can perform the alternative occupation of "addresser" *and* that occupation is available in significant numbers in the regional or national economies.

**2.    "Addresser"**

Plaintiff contends that the occupation of "addresser"[5] is obsolete and, accordingly, does not exist in significant numbers in the economy, "per SSA's own studies regarding obsolete jobs."[6] [JS at 22 (citing the May 2011 Occupational and Medical Vocational Claims Review Study ("Study") (attached to the JS) at 284-85) ("Our study found a substantial number of cases where adjudicators cited jobs that might not exist in significant numbers in the national economy, or whose DOT job descriptions are obsolete. . . . Addresser was one . . . , that's the person that

---

[5]    The occupation of "addresser" is Reasoning Level 2. DOT No. 209.587-010.

[6]    Alternatively, plaintiff argues that even if the occupation is not obsolete, 10,217 jobs in the national economy and 3,084 jobs in California is not "significant." [JS at 23, 26.] The Court agrees with plaintiff that 10,217 jobs in the national economy is not a significant number. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014) (noting that whether "25,000 national jobs is sufficient presents a close call"). In fact, in this case, the ALJ *only* determined that the "addresser" work exists "in significant numbers in the national economy," and did not address whether the regional numbers were significant. Based on Gutierrez, that finding was error. However, because the relevant statute defines "significant number of jobs" as *either* regional or national, the ALJ's decision must still be upheld if 3,084 jobs in California is "significant." Beltran, 700 F.3d at 389-90. In Gutierrez, the court found that "2,500 jobs constitute[s] significant work in the region of California"; thus, 3,084 jobs in California is a "significant" number of jobs. Gutierrez, 740 F.3d at 528. However, this is *only* the case if the "addresser" job as described in the DOT is still an available occupation, which, as discussed herein, appears unlikely.

addresses by hand or typewriter, envelopes, cards, advertising literature").[7]  Plaintiff argues that the DOT's obsolescence is "widely recognized," and cites to cases noting that the DOT was last updated in 1991; that the Department of Labor, "the author of the DOT, now maintains O*NET as the current source of information"; and that the DOT is "considered obsolete by most other federal agencies." [JS at 23 (citing cases) (internal quotation marks omitted).]  Indeed, plaintiff points out that a Ninth Circuit district court recently relied on the Study to find that the occupation of "press clippings cutter/paster" was obsolete; that court also found that "the DOT has not been updated since 1991 as it has been replaced by a website, O*NET"; that the press clippings cutter/paster job described in the DOT does not exist in either an identical or substantially similar fashion in the O*NET, "suggesting that the position no longer exists in significant numbers in the economy"; and that the Study also reported that it is doubtful that certain occupations exist in significant numbers in the economy anymore.  [JS at 23 (citing Scott v. Colvin, 2015 WL 11438598, at *13 (N.D. Cal. Dec. 9, 2015) (citation omitted)).]  The Scott court also took judicial notice of the fact that since 1991 the increasing use of computers has likely reduced the need for the physical press clipping task.  Scott, 2015 WL 11438598, at *13.  Plaintiff also relies on a Sixth Circuit case, which held that "[w]hile the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy . . . common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted."[8] [JS at 23 (quoting Cunningman v. Astrue, 360 F. App'x 606, 616 (6th Cir. 2010) (internal quotation marks omitted).]

Defendant argues that plaintiff did not raise any issue at the hearing regarding the VE's qualifications or methodology, and now "asks this Court to accept her untrained analysis of job

---

[7] Other such obsolete descriptions discussed in the Study included the occupations of "Host/Hostess" -- the person who greets unaccompanied guests in a dance hall and introduces them to a dance partner; and "Magnetic Tape Winder -- the person who winds cassette tapes. [Study at 285.]

[8] In this case, the VE testified only that her source of information was the DOT. [AR at 58.] She did not state the source from which her statistical job numbers was obtained. [Id.]

9

data as unassailable."⁹ [JS at 24.] Defendant further asserts that the Study "is a transcript of a meeting where various professionals in relevant fields make presentations regarding their observations of jobs," and "is not, as Plaintiff attempts to make it, an unassailable data collection, nor is it necessarily accepted by the agency as a whole." [Id.] According to defendant, therefore, the Court "cannot overturn the ALJ's proper reliance on an actual expert's testimony." [Id.]

Plaintiff responds that the Commissioner did not refute plaintiff's argument that the "addresser" occupation is obsolete. [JS at 26.] She also notes that she raised the issue of obsolescence (as well as the Reasoning Level 3 conflict with respect to the "document preparer" occupation) to the Appeals Council. [Id.; see also AR at 426-27.]

In a case closely analogous to the facts here, the Ninth Circuit, in an unpublished opinion, rejected an ALJ's reliance on VE testimony as to the number of "head dance hall hostess positions." Farias v. Colvin, 519 F. App'x 439, 440 (9th Cir. 2013). That occupation is defined by the DOT as an individual who introduces unaccompanied persons at dance halls to dance hall hosts and hostesses, explains the procedure of engaging a social partner, and inspects the dress of the dance hall hosts and hostesses "to ensure that they present clean and pleasing personal appearance." DOT No. 349.667-014; Farias, 519 F. App'x at 440. The Farias court stated that "[a] reasonable mind would not accept the VE's testimony that there are 3,600 head dance hall hostess positions in the local economy and 342,000 in the national economy." Farias, 519 F. App'x at 440 (citing Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (noting that "[t]he findings of the Secretary as to any fact, *if supported by substantial evidence*," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," "shall be conclusive") (emphasis added)). Instead, the Ninth Circuit suggested that the VE likely erroneously

---

⁹ In the recent case of Shaibi v. Berryhill, the Ninth Circuit held that "when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel. Specifically, our holding encompasses challenges based on an alleged conflict with alternative job numbers gleaned from the CBP or the OOH." Shaibi, 883 F.3d 1102, 1109 (9th Cir. 2018) (footnote omitted). Because plaintiff here is not specifically challenging the VE's job numbers based on alternative sources for those numbers, but is instead challenging the availability of the occupation itself, the holding of Shaibi does not apply.

cited numbers for restaurant hostess positions, "an occupation that exists in far larger numbers." Id. The Ninth Circuit thus found that the ALJ's step five conclusion was "not supported by substantial evidence -- 'such relevant evidence as a *reasonable mind* might accept as adequate to support [the ALJ's] conclusion.'" Id. (quoting Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (emphasis added)); see also Scott, 2015 WL 11438598, at *13 (taking judicial notice of the fact that since 1991 the use of computers has become increasingly common in the workplace, "likely reducing the need for the physical press clipping task," and relying on Farias in finding that substantial evidence did not support the ALJ's step five determination).

The same result is warranted in this case. As in Farias, it is not unreasonable to assume that the occupation of "addresser," which -- as described by the DOT -- provides for addressing envelopes *by hand or by typewriter*, is an occupation that has significantly dwindled in number since 1991 in light of technological advances. That being the case, a reasonable mind would not accept the VE's testimony that there are over 3,000 such positions in the region of California alone, or even that there are over 10,000 in the national economy.[10] Furthermore, in addition to a common sense understanding of the occupation as described by the DOT, the information presented in the Study and in other case authority regarding this (and similarly archaic) occupation(s), casts additional doubt on the reliability and credibility of the VE's testimony and on the ALJ's conclusion that "addresser" jobs exist in significant numbers. See Beltran, 700 F.3d at 389 (holding that jobs that are "rare" or "generally unavailable" cannot be held to exist in significant numbers) (citing Walker v. Matthews, 546 F.2d 814, 820 (9th Cir. 1976)); see also Herrmann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014) (Posner, J.) ("If the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs"). Additionally, in light of the fact that the DOT was last updated in 1991, one court has noted:

---

[10] But see supra note 6.

> It is impossible not to know that the occupational landscape in the United States has been dramatically and permanently transformed since [1991] by the proliferation of automation, computers, and the internet. Beyond the obvious, however, the SSA [Social Security Administration] has been working since 2008 to address issues with the DOT. On December 9, 2008, then Commissioner Michael J. Astrue established the Occupation Information Advisory Panel (OIDAP) to provide independent advice to the Administration on forming an occupational information system (OIS) for SSA's disability programs and adjudicative needs. The OIDAP solicited public comment and made recommendations. Now, the SSA is well into the development of its own OIS that is intended to keep current by regularly incorporating updated information through the use of a data collection process called the Occupational Requirements Survey (ORS). The OIS is scheduled to be online by 20[20].
>
> . . . .
>
> To summarize, the sky is not in fact falling. The prior order did nothing more or less than rely on a Sixth Circuit opinion to note that the ALJ should have been sensitive to the fact that DOT entries may be outdated. See Cunningham . . . . The Court then noted that common sense suggests that the occupations of ticket taker and monogram machine tender may well be much different in kind or number than they were in 1991. Finally, the Court, relying on information in Plaintiff's brief, concluded that this initial hunch was correct. Now, the Court notes that the Social Security Administration has publicly acknowledged the DOT's vulnerability to obsolescence and has mounted an enormous effort to ensure ALJs have access to reliable occupational information. This further bolsters the Sixth Circuit's and Judge Posner's conclusions [in Cunningham and Herrmann, respectively] . . . .

Johnson v. Berryhill, 2017 WL 4542228, at *2 (W.D. Ky. Oct. 11, 2017) (footnotes omitted).[11] Additionally, one Ninth Circuit district court noted that the Appeals Council had previously remanded that case to address the availability of that job and whether it is currently obsolete, based on wildly conflicting, contradictory, and ill-supported VE testimony about the availability of the "addresser" job. See Boomhower v. Berryhill, 2017 WL 7167116, at *11 (D. Or. Oct. 25, 2017) (noting that the Appeals Council directed the ALJ on remand to address conflicting VE testimony "about actual availability . . . of addresser jobs as currently performed . . . [and] regarding whether addresser was obsolete") (internal quotation marks omitted). In that case, even though the ALJ on remand had considered the testimony of several VEs who had answered interrogatories addressing the viability and availability of the "addresser" occupation, the district

---

[11] See Soc. Sec. Admin., *Occupational Information System Project*, https://www.ssa.gov/disabilityresearch/occupational_info_systems.html (last visited March 30, 2018) (noting that the Department of Labor stopped updating the DOT in 1991 and stating that "[i]n order to make accurate decisions, we must have information that reflects current occupations and their requirements").

court again remanded the matter, finding that based on the conflicting, contradictory, and unconvincing record before it, it could not "confidently conclude that no reasonable ALJ, with the benefit of the full administrative record, would have reached a different conclusion" regarding the availability of the "addresser" position. Id. (citation omitted).

Plaintiff points the Court to the unpublished Ninth Circuit case of Gallo v. Comm'r of Soc. Sec. Admin., 449 F. App'x 648 (9th Cir. 2011). In Gallo, the plaintiff challenged the VE's testimony upon which the ALJ relied at step five. Gallo, 449 F. App'x at 650. Specifically, at the district court level, Gallo argued that the "addresser" (or "mail clerk" as it was sometimes referred to in the decision) occupation "probably did not exist at all in 2007 as it did in 1977" and, therefore, the VE's testimony lacked reliability. See Gallo v. Comm'r of Soc. Sec. Admin., 2010 WL 545848, at *20 (N.D. Cal. Feb. 12, 2010). Gallo also argued that "because the vocational description includes the use of a typewriter and manual addressing rather than a computer and printer, 'as a matter of very common knowledge recognizable of judicial notice,' the description of the vocation must be outdated." Id. The district court found that an ALJ may take administrative notice "of any reliable job information, including information provided by a VE," and rejected plaintiff's contention regarding the DOT job description because she "fail[ed] to provide any evidentiary or legal basis for her argument," and because the record contained the VE's testimony "that 175,000 such jobs exist nationwide."[12] Id. (citations omitted). On appeal, the Ninth Circuit affirmed the district court decision, and briefly noted that "[a]lthough the description in the . . . [DOT] of the 'Addresser' job contains a seemingly antiquated reference to typewriters, the ALJ was nonetheless entitled to rely

---

[12] The district court in Gallo used the otherwise distinct job titles of "mail clerk" (DOT No. 209.687-026) and "addresser" (DOT No. 209.587-010) seemingly interchangeably and, although the VE testified Gallo could work as a "mail clerk," the VE mistakenly provided the DOT code for "addresser." See, e.g., Gallo, 2010 WL 545848, at *20 (citing the VE's testimony that Gallo could work as a "mail clerk," "except [for] postal clerks, DOT code *209.587-010*" (which is the DOT code for "addresser") (emphasis added)). This interchangeability hypothesis is further supported by the VE's testimony that in 2010 there were 175,000 "mail clerk" positions nationwide and 24,000 in California. Gallo, 2010 WL 545848, at *20. As the Ninth Circuit similarly found in Farias, such large numbers are more likely to be consistent with the "mail clerk" occupation as defined in the DOT at 209.687-026, rather than with the "seemingly antiquated" description of the duties of an "addresser."

13

on the VE's testimony that the Addresser job exists in significant numbers in the national economy." Gallo, 449 F. App'x at 650 (citations omitted). However, unlike the plaintiff in Gallo, plaintiff here has provided the Court with evidence supporting her position. [JS at 22-23, 26-27, Study.] In any event, Gallo is not binding precedent and, given its inherent ambiguities (see supra note 11), is not even persuasive.

As other courts have found, common sense (bolstered here by the information presented in the Study and on the SSA website itself), casts doubt on the reliability and credibility of the VE's testimony and on the ALJ's reliance on that testimony to conclude that the occupation of "addresser" currently exists in significant numbers.[13] See Beltran, 700 F.3d at 389 (holding that jobs that are "rare" or "generally unavailable" cannot be held to exist in significant numbers) (citing Walker, 546 F.2d at 820); see also Herrmann, 772 F.3d at 1113. Indeed, sufficient doubt has been cast as to the reliability of the VE's testimony to warrant a conclusion that substantial evidence does not support the ALJ's determination that the "addresser" occupation exists in significant numbers either regionally or nationally, because that determination was not based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

Based on the foregoing, remand is warranted for the VE to determine whether the "addresser" position, as performed in the modern economy, is still an occupation available to plaintiff given her age, experience, education, and RFC.[15]

---

[13] Statistical job information is not contained in the DOT. See Herrmann, 772 F.3d at 1113-14 ("not only is [the DOT] an obsolete catalog of jobs (most of the entries in it date back to 1977) but it contains no statistics regarding the number of jobs in a given job category that exist in the local, state, or national economy. For the numbers, vocational experts normally rely on a journal called the Occupational Employment Quarterly, published by a company called U.S. Publishing . . . .").

[14] It should be noted that the Court is not concluding that the "addresser" position is obsolete, or that it does not exist in significant numbers; it only recognizes that plaintiff has created sufficient doubt to merit a remand so that a VE can determine the availability of this position in today's marketplace and, if warranted, the availability of other (non-obsolete) occupations plaintiff would be able to perform, if any.

[15] Because the Court finds remand is appropriate on this issue, the Court will not address
(continued...)

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. The ALJ on remand, with the assistance of a VE, shall determine the availability of the "addresser" position in today's marketplace and, if warranted, the availability of other (non-obsolete) occupations existing in the national and/or regional economy that plaintiff can still perform, if any, given her age, education, work experience, and RFC.[16] See Shaibi, 870 F.3d at 882-83.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

/

/

/

---

[15](...continued)
plaintiff's remaining issues.

[16] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 2, 2018

*Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE